# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

THE PRESTWICK GROUP, INC.,

                           Plaintiff,

v.

LANDMARK STUDIO LTD.,

                           Defendant,

and

ERIE INSURANCE EXCHANGE,

                           Intervenor.

Case No. 14-CV-731-JPS

ORDER

In this civil suit, filed on June 24, 2014, Plaintiff, The Prestwick Group, Inc. ("Prestwick"), alleges trade dress infringement and unfair competition in violation of the Lanham Act and copyright infringement against Defendant Landmark Studio Ltd. ("Landmark"). (Docket #1). On March 27, 2015, Landmark filed a Motion for Summary Judgment. (Docket #26). The motion is now fully briefed and ready for disposition. As discussed below, the Court will grant the motion as to the trade dress infringement claim and deny the motion as to the copyright infringement claim.

Before turning to the undisputed facts, the Court must address two matters. First, the parties each filed separate Motions to Restrict. (Docket #31, #46). They request to shield certain documents from the public because they contain confidential business information and they have been designated as confidential pursuant to the Court's February 13, 2015 Protective Order (Docket #24). With no objection from either party, the Court will grant the requests to restrict confidential documents. As noted in the Protective Order, the Court will not enter any decision under seal, however, unless absolutely necessary. The Court will limit its factual discussion in this Order to

information from the unrestricted documents in order to maintain confidentiality.

Second, on April 23, 2015, Prestwick filed a Motion for Leave to File an Amended Complaint. (Docket #39). On April 24, 2014, the Court set a modified briefing schedule on the matter. (Docket #42). Prestwick indicates that its claims are substantively unchanged and that Landmark would not suffer any prejudice or be burdened in any way by the amendment. (Docket #40 at 1-2). Landmark did not oppose the motion. As such, the Court will grant the Motion for Leave to File an Amended Complaint. (Docket #39).

1.      FACTUAL BACKGROUND[1]

1.1      Prestwick Beginnings

Matt Morse ("Morse"), along with his then business partner, Bob Gerlach, founded Great Lakes Golf Course Products in 1997, which would eventually become Prestwick. (Prestwick PPF ¶ 1).[2] At its inception, Prestwick sold golf course accessory products, such as rope stakes manufactured from recycled plastics, signs, tee markers, hazard markers, and out of bounds markers, among other products. (Prestwick PPF ¶ 2). In approximately 1998, Prestwick began designing and manufacturing round waste enclosures, divot mix containers, and round and square water cooler

---

[1]The cited facts are from the parties' proposed findings of fact, unless otherwise indicated. The Court will cite to Landmark's Proposed Findings of Fact (Docket #80) as "Landmark PFF." Likewise, it will cite to Prestwick's Proposed Findings of Fact (Docket #37) as "Prestwick PFF." Unless otherwise indicated, the proposed findings to which the Court cites are undisputed.

[2]Landmark used the term "Prestwick" for ease of reference in its proposed findings of fact to refer to all of the former entities as well as the current Prestwick Group entities: namely, Prestwick Golf Group, Prestwick Limited, Max-R and Nexterra. (Landmark PFF ¶ 1). In order to avoid any confusion, the Court will do the same except when specific references are necessary.

enclosures. The waste enclosures, divot mix containers, and round and square water cooler enclosures were manufactured using slats of recycled plastic. (Prestwick PPF ¶ 3). In 1998, Morse realized that the waste and water cooler enclosures that were being offered to golf courses were, to the best of his knowledge, sold only in solid colors, predominantly green. (Prestwick PPF ¶ 4). Morse believed that if he could "combine the colors…[Prestwick] could actually change the market." (Prestwick PPF ¶ 5). Thus, beginning in approximately 1998, Prestwick began offering recycled plastic water cooler enclosures that contained posts with colors that contrasted with the colors of the front slats of the water cooler enclosure. (Prestwick PPF ¶ 7).

### 1.2    Prestwick & Landmark Relationship

According to Morse, Prestwick first encountered Landmark in early 1999 when Mark Hammer found Landmark to mold log tee markers for Prestwick. The relationship continued until sometime in 2002. (Landmark PFF ¶ 1; Prestwick PFF ¶ 46). In addition to log tee markers, Landmark also made signs, internal rings for round waste enclosures, and lids for enclosures for Prestwick. (Landmark PFF ¶ 2). Prestwick used Landmark because it was focused on sales and marketing and used outside contracting "to do a lot of [its] stuff in the beginning." (Response to Landmark PFF ¶ 3) (clarifying deposition testimony).

The relationship with Landmark ended when a Prestwick salesman got a call from a company that had problems with tee markers and wanted replacements. Prestwick determined that the company was mistaken and had in fact purchased the tee markers from Landmark. (Landmark PFF ¶ 4; Prestwick PFF ¶¶ 47-48). Realizing that Landmark was competing with Prestwick using the product that Prestwick hired Landmark to create for Prestwick, Morse called Dan Hlava ("Hlava"), Landmark's President. Morse

told Hlava that Landmark could either compete with Prestwick or be Prestwick's vendor, but not both. Landmark opted to be a competitor and Prestwick ended its relation with Landmark. (Landmark PFF ¶ 5; Prestwick PFF ¶ 49).    At around the same time as Morse ended Prestwick's business relationship with Landmark, Landmark hired Eric Tallmadge ("Tallmadge"), who, at that time, was a Prestwick sales representative. (Landmark PFF ¶¶ 11-12; Prestwick PFF ¶ 50). Prior to Tallmadge's departure from Prestwick (but after having accepted an offer to join Landmark), Tallmadge went into Prestwick's offices on a Sunday and copied Prestwick customer and vendor information. (Prestwick PFF ¶ 51).[3] After Tallmadge joined Landmark, Morse felt the "knocking off" of Prestwick's products really accelerated. (Landmark PFF ¶ 13).

Prestwick retained counsel to address the actions of Landmark and Tallmadge. (Landmark PFF ¶ 14). On July 23, 2002, Prestwick's counsel sent a detailed letter to Landmark's counsel setting forth a host of allegations relating to improper conduct by Landmark and Tallmadge. (Landmark PFF ¶ 15). Prestwick's counsel alleged in 2002 that Landmark had engaged in a series of deceitful and unlawful acts, entered into an unlawful combination with a former employee, and engaged in unfair competition with Prestwick. The alleged illegal acts included infringement of trade dress, false and misleading designation of origin, misleading advertising, interference with contract, civil conspiracy, conversion and unlawful misappropriation of trade secrets. (Landmark PFF ¶ 16). On August 14, 2002, Prestwick sent a second letter, noting that no response had been received and that Prestwick would

---

[3]The parties dispute whether Tallmadge took the information from Prestwick to Landmark and also dispute the details surrounding the incident. (*See* Prestwick PFF ¶ 53 and Landmark Response).

file suit. (Landmark PFF ¶ 17). Prestwick decided not to pursue Tallmadge or Landmark in 2002. (Prestwick ¶ 18).

### 1.3    Landmark's Alleged Infringement Grows

In approximately 2002, Landmark began to expand its business to offer other products to the golf course industry that closely resembled Prestwick's products, including waste and water cooler enclosures, and other products that competed with Prestwick. (Prestwick PFF ¶ 54). Landmark offered their own line of similar round enclosures and may have copied the Prestwick design for the internal ring. Shortly thereafter, Morse saw Landmark use Post and Panel design, similar panel designs, same posts designs, etc. (Landmark PFF ¶ 20). Morse saw the Landmark 2003 product catalog in 2003 and concluded that Landmark was copying Prestwick products and item numbers but took no action. (Landmark PFF ¶ 27). Mark Hammer of Prestwick testified that from 2003 or 2004 on, Landmark was contacting Prestwick customers and constantly selling products similar to Prestwick, causing customer confusion. (Landmark PFF ¶ 36).

Prestwick alleges that Landmark's infringement expanded more in 2007 when Landmark introduced the Hampton series using decorative arches in its waste enclosures. (Prestwick PFF ¶ 67). Landmark again expanded in 2009 with its Luxury series, which Prestwick alleges contained all the elements of Prestwick's trade dress, including posts and panels of contrasting colors. (Prestwick PFF ¶¶ 69-70).[4]

---

[4]Because the Court resolves the trade dress infringement claim on Landmark's laches defense, the Court finds it unnecessary to delve into facts related to whether the trade dress is protectable, such as functionality and secondary meaning of the trade dress, many of which are disputed by the parties.

Tallmadge testified that while he was working at Landmark "we hardly did anything outside of golf courses" and that the "lion's share" of Landmark's efforts prior to 2011 (while he worked at Landmark) were directed at the golf marketplace. (Prestwick PFF ¶ 73). Tallmadge also testified that "exploring other marketplaces was not high on [his] list" when he left Landmark in 2011 and that it was not "high on anyone's list at Landmark" while he was employed there. (Prestwick PFF ¶ 74). Prestwick argues that these facts establish that "Landmark's expansion into the 15 markets it currently sells to occurred in 2011, after Tallmadge left Landmark's employment." (Prestwick PFF ¶ 15).[5]

### 1.4 Prestwick's Copyright in its Rendering for LMU[6]

In approximately September 2010, Prestwick first came into contact with William Stonecypher ("Stonecypher"), the Waste Management Recycling Manager, for Loyola Marymount University ("LMU"). (Prestwick PFF ¶ 128). In approximately December 2010, Jason Heard of Prestwick sent Stonecypher a 3-D rendering created by Prestwick of the product that Prestwick proposed to build for LMU, which at that time was an LMU-badged version of Max-R's Verde collection. (Prestwick PFF ¶ 129). The 3-D rendering of Max-R's LMU-badged Verde series enclosure contained a conspicuous copyright notice stating "©2010 Max-R." (Prestwick PFF ¶ 130). Sometime in 2011, Prestwick sold waste and recycling stations to LMU; the

_____

[5]Landmark disputes this assertion. Landmark instead argues that these facts establish only that Tallmadge made no efforts prior to 2011. The Court notes that Prestwick provides no further facts regarding Landmark's expansion into the 15 markets it currently sells to. (*See* Response Prestwick PFF ¶ 15).

[6]As discussed more in the analysis, material facts are in dispute in relation to this issue.

parties dispute facts related to which entity designed the product. (*See* Prestwick PFF ¶ 131 and Landmark Response).

On October 18, 2011, at 11:51 a.m., Stonecypher sent Chad Schaefer ("Schaefer"), a Landmark employee, a copy of Prestwick's rendering, with the copyright notice removed from the photo, and asked Schaefer for estimates for the "cost of six, eight, twelve, eighteen, twenty-four." Schaefer responds by stating, in part, "The Landmark team is on it! I have my design team on the telephone as I'm writing this email back to you. the [sic] next steps will require use to produce a rendering, which will generate an accurate cost." (Prestwick PFF ¶ 134). At 3:20 p.m. on October 18, 2011, Schaefer forwarded Stonecypher's 11:51 a.m. e-mail to Brad Horton ("Horton") and asked Horton, "Can you reproduce the product (see below & attached) using your specialized drawing technique?" (Prestwick PFF ¶ 135). Two days later, on October 20, 2011, Schaefer e-mailed Stonecypher a 3-D rendering that Prestwick alleges is "virtually identical" to the Prestwick rendering that Stonecypher sent to Schaefer on October 18, 2011.[7] (Prestwick PFF ¶ 136).

2.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over

---

[7]Landmark disputes the characterization of the rendering as virtually identical. (Response to Prestwick PFF ¶ 136).

"material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4).

On summary judgment, courts must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). Additionally, "[o]n summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson,* 477 U.S. at 248.

3.    DISCUSSION

Landmark's motion for summary judgment argues that: (1) the doctrine of laches bars Prestwick's claim for trade dress and unfair competition; (2) alternatively, that Landmark did not infringe on Prestwick's

claimed trade dress; (3) Prestwick has failed to properly allege a claim for unfair competition; and (4) Landmark did not violate Prestwick's copyright in the LMU product. Prestwick opposes all aspects of the summary judgment motion with the exception of the third argument—acknowledging that its Complaint does not contain a separate allegation of unfair competition apart from its trade dress infringement claim. (*See* Pl's Opp. at 40, Docket #32). As the parties now agree on this issue, the Court need not address this argument any further.[8] As discussed in detail below, the Court finds that: (1) summary judgment will be granted on the trade dress infringement claim because the doctrine of laches applies; and (2) material disputed facts preclude summary judgment on the copyright infringement claim.

### 3.1    Laches

Landmark argues that they are protected from Prestwick's allegations of trade dress infringement and unfair competition through the doctrine of laches. The doctrine of laches is an equitable defense that is "derived from the maxim that those who sleep on their rights, lose them." *See Chattanoga Mfg., Inc., v. Nike, Inc.,* 301 F.3d 789, 792 (7th Cir. 2002). "[L]aches is an equitable doctrine not fixed by any unyielding measure, but to be determined in each case under its factual situation, and allowable 'where the enforcement of the assured right would work injustice.'" *Baker Mfg. Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008, 1012 (7th Cir. 1070) (citing *Boris v. Hamilton Mfg. Co.*, 253 F.2d 526, 529 (7th Cir. 1958); *see Piper Aircraft Corp. v. Wag–Aero, Inc.*, 741 F.2d 925 (7th Cir. 1984).

The application of laches in a particular case is dependent upon a showing of: (1) an unreasonable lack of diligence by the party against whom

---

[8]As such, Prestwick will be barred from any future arguments as to a separate unfair competition claim.

the defense is asserted; and (2) prejudice arising from this lack of diligence. *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 822 (7th Cir. 1999). The Seventh Circuit "has held consistently that under the two-prong test for laches the plaintiff bears the burden of explaining its delay in bringing suit." *Lingenfelter v. Keystone Consol. Indus., Inc.,* 691 F.2d 339, 340 (7th Cir. 1982).

In lawsuits filed under the Lanham Act, the doctrine of laches plays a more important role than it otherwise might because the Act does not contain a statute of limitations on trademark infringement claims. Instead, the Seventh Circuit looks to "analogous state statutes of limitations." *Chattanoga,* 301 F.3d at 793. Once a relevant state limitations period has run, an allegedly infringing party is entitled to a presumption that the doctrine of laches applies. *Id.*

Here, the parties do not agree on an analogous statute of limitations. Landmark argues that the three-year statute of limitations found in the Uniform Trade Secrets Act, Wis. Stat. § 893.51(2), is the analogous statute, or, in the alternative, a four-year general limitation on the commencement of federal civil actions. 28 U.S.C. § 1658. (Def's Reply at 2; Docket #2). In contrast, Prestwick argues, without any support, that a six-year statute of limitations applies. (Pl's Opp. at 12; Docket #32). Neither party makes a particularly persuasive argument as to which statute the Court should consider analogous; however, the Court need not resolve this issue since it finds laches would apply even assuming a six-year analogous statute of limitations. The Court now turns to analyzing each prong of the laches test, individually.

### 3.1.1 Unreasonable Delay

The Court finds an unreasonable lack of diligence by Prestwick in bringing this suit. It is undisputed that Prestwick had knowledge of at least

some of the alleged infringement in 2002 when it sent a detailed letter to Landmark's counsel setting forth a host of allegations relating to improper conduct by Landmark and Tallmadge. (*See* Landmark PFF ¶ 15). Prestwick alleged illegal acts against Landmark, including:  infringement of trade dress, false and misleading designation of origin, misleading advertising, interference with contract, civil conspiracy, conversion and unlawful misappropriation of trade secrets. (Landmark PFF ¶ 16). This 12-year delay is approximately four times longer than the three-year statute of limitations (as suggested by Landmark), or, in the alternative, two times longer than the six-year statute of limitations that Prestwick suggests. (Pl's Opp. at 12). Under either interpretation, however, there is a presumption that Prestwick's delay was inexcusable. *See Chattanoga,* 301 F.3d at 793. In turn, Prestwick attempts to refute this presumption by arguing that it did not unreasonably delay in bringing suit because Landmark progressively encroached on Prestwick's trade dress. (Opp. at 9, Docket #32).

The doctrine of "'[p]rogressive encroachment is an offensive counter-measure to the affirmative defense [ ] of laches.'" *Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Credito Oriental,* 698 F.3d 9, 21 (1st Cir. 2012) (quoting *Kellogg Co. v. Exxon Corp.,* 209 F.3d 562, 571 (6th Cir. 2000). The Seventh Circuit recently explained that "[u]nder this doctrine, where a defendant begins use of a trademark or trade dress in the market, and then directs its marketing or manufacturing efforts such that it is placed more squarely in competition with the plaintiff, the plaintiff's delay is excused." *Chattanoga,* 301 F.3d at 794. The parties agree that the relevant test for progressive encroachment requires: "proof that (1) during the period of the delay the plaintiff could not reasonably conclude that it should not bring suit to challenge the allegedly infringing activity; (2) the defendant materially

altered its infringing activities; and (3) suit was not unreasonably delayed after the alteration in infringing activity." *Oriental*, 698 F.2d at 21-22.

Prestwick argues that progressive encroachment applies here because Landmark's encroachment on its trade dress was progressive, with Landmark materially altering its infringement in 2011 and 2012 respectively. Specifically, Prestwick alleges that Landmark materially altered its infringement activity in 2011 by expanding its business beyond golf, to include numerous other markets and in 2012 by intentionally copying Prestwick's design for its LMU-badged Halston series. (Pl's Opp. at 11). Thus, Prestwick argues that the filing of this lawsuit in June 2014 was not unreasonable because it was only three years after Landmark's market expansion. (Pl's Opp. at 12). Prestwick analogizes this case to *Oriental,* a First Circuit case where the court applied the doctrine of progressive encroachment when a defendant materially altered its use of a mark by expanding geographic reach of its business and creating a new logo emphasizing the infringing mark. *Oriental*, 698 F.2d at 21-22.

In *Oriental,* when the defendant began using the plaintiff's mark in 1966, its operations were geographically limited to one branch in Puerto Rico. *Id.* at 13. Thirty years later, as of 1996, the defendant operated only three branches, which were all located in northeastern Puerto Rico. *Id.* Between 2008 and 2010, the defendant expanded its geographic reach by purchasing three branches in San Juan. *Id.* Defendant also purchased a branch in southeastern Puerto Rico in 2010. *Id.* Additionally, in 2009, the defendant began an "expansive advertising campaign in newspapers and on television, including the use of advertising media not previously used by it, such as billboards and cable television." *Id.* at 14. Further, the defendant adopted a new logo with the mark that contained similar orange trade dress used in the

plaintiff's logo as well as altered the font of the mark to emphasize the term "Oriental" (the plaintiff's mark). *Id.* The Court held that the allegedly infringing activity was de minimus before 2009 and that the doctrine of progressive encroachment applied. *Id.* At 24.

Here, Prestwick fails to point out that the crux of the court's analysis in *Oriental* focused on the first prong of the progressive encroachment test. Here, the Court finds the second prong—whether Landmark "materially altered" its infringement activity—to be determinative. The court in *Oriental* noted that the materially altered requirement "'turns...on the likelihood of confusion resulting from the defendant's moving in the *same or similar market area* and placing itself more squarely in competition with the plaintiff.'" 698 F.3d at 22 (quoting *Kellogg,* 209 F.3d at 573). Here, it is undisputed that one of Prestwick's customers confused a Landmark product for a Prestwick product as early as 2002. (*See* Prestwick PFF ¶ 47) (noting the customer confusion incident that led Prestwick to end its relationship with Landmark). Additionally, Prestwick employee Hammer testified that he learned of customer confusion between Landmark and Prestwick back in 2003 or 2004, and 2005 and 2006. (Landmark PFF ¶ 40).

The Court finds that Prestwick fails to show Landmark materially altered its business specifically in 2011; instead, the Court views Landmark's growth as more gradual and the Court does not find that at one specific point in time Landmark "materially altered" its infringement action. Increased sales alone do not amount to progressive encroachment. *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Assoc.,* 465 F.3d 1102, 1110 (9th Cir.

2006) ("A junior user's growth of its existing business and concomitant increase in its use of the mark do not constitute progressive encroachment").[9]

Both Prestwick and Landmark grew their markets and product lines from 2002 to 2014. It is undisputed that Morse felt that Landmark's "knocking off of Prestwick's products really accelerated" in 2002 after Tallmadge joined Landmark. (Landmark PFF ¶ 13). Morse saw the Landmark 2003 product catalog in 2003 and concluded that Landmark was copying Prestwick products and item numbers but took no action. (Landmark PFF ¶ 27). Prestwick further alleges that Landmark's infringement expanded more in 2007 when Landmark introduced the Hampton series using decorative arches in its waste enclosures. (Prestwick PFF ¶ 67). Landmark again expanded in 2009 with its Luxury series, which Prestwick alleges contained all the elements of Prestwick's trade dress, including posts and panels of contrasting colors. (Prestwick PFF ¶¶ 69-70).

Prestwick contends Landmark has copied its business model with a pattern of conduct of over 15-17 years (*see* Landmark PFF ¶ 33), yet at the same time requests that the Court find 2011 or 2012 as the specific point in time that Landmark materially altered its infringement activity. The Court declines to do so. Prestwick fails to rebut the presumption that its delay was inexcusable. *See Chattanoga,* 301 F.3d at 793. In particular, the Court finds the lack of evidence that Prestwick offers in relation to Landmark's post-2011 expansion into 15 markets other than golf to be telling. As Landmark points

_____

[9]This limitation is consistent with the Seventh Circuit's view that a trademark owner who has full knowledge of infringement should not be permitted "to wait and see how successful his competitor will be and then destroy with the aid of court decree, much that the competitor has striven for and accomplished." *Hot Wax,* 191 F.3d at 823 (quoting *Polaroid Corp. v. Polarad Elects. Corp.,* 287 F.2d 492, 498 (2d Cir. 1961)).

out, and as far as the Court can tell, the only evidence offered in relation to the expansion is Tallmadge's testimony, which relates solely to his efforts to grow the company, and says nothing about the rest of Landmark. Prestwick fails to show any facts on what specific 15 markets Landmark expanded into, nor does Prestwick show details related to any geographical location expansion. The facts available to the Court here are wholly different from *Oriental* where the defendant lay dormant for thirty years in one geographic region and then spread to the entire island of Puerto Rico while at the same time changing its mark to more closely resemble the plaintiff's. As such, Prestwick fails to meet the second-prong of the progressive encroachment test.

Finally, the Court also notes that Prestwick's unreasonable delay is not mitigated by the fact that it sent two cease and desist letters over 12 years. In *Hot Wax,* the Seventh Circuit held that five warning letters sent over the course of two years were insufficient to mitigate the unreasonableness of the plaintiff's 10 to 20-year delay in taking legal action against the defendant's alleged false advertising. 191 F.3d at 823-24. The court stated:

> Although we have recognized that attempts to resolve a dispute without resorting to a court do not constitute unreasonable delay for determining the applicability of laches, Hot Wax's sparse letter writing campaign can hardly be characterized as a serious attempt to resolve its concerns regarding Turtle Wax's products and advertising.

*Id.* Similarly, Prestwick's two cease and desist letters in this case do not reflect a genuine attempt to settle the infringement dispute. *See A.C. Aukerman Co. v. Miller Formless Co.,* 693 F.2d 697, 700 (7th Cir. 1982) ("…[T]he negotiations must ordinarily be continuous and bilaterally progressing, with a fair chance of success, so as to justify significant delays.").

Thus, the Court finds no progressive encroachment in this case and, as such, Prestwick has failed to rebut the presumption of unreasonable delay. Upon this finding, the Court turns to the prejudice-prong of the laches analysis.

### 3.1.2   Prejudice to Landmark

Turning to the second element of laches, a party asserting a laches defense must show that it has been prejudiced by the trademark owner's unreasonable delay in pursuing its cause of action. *Chattanoga*, 301 F.3d at 792-93. In defining prejudice, the Seventh Circuit has stated:

> A defendant has been prejudiced by a delay when the assertion of a claim available some time ago would be "inequitable" in light of the delay in bringing that claim and ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed. In this context, we have explained that laches is a question of degree. To this end, if only a short period of time has elapsed since the accrual of the claim, the magnitude of prejudice required before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice will be required.

*Hot Wax*, 191 F.3d at 824 (internal citations omitted). The Seventh Circuit has held that prejudice may be presumed when the delay is unreasonable and inexcusable. *Baker Mfg.*, 430 F.2d at 1009.

 Prestwick asks the Court to adopt the Eighth Circuit's approach as explained in *Roederer v. J. Garcia Carrion, S.A.*, 569 F.3d 855, 859 (8th Cir. 2009). In *Roederer,* the court acknowledged that "courts tend to reject a defendant's assertion of the laches defense when the defendant knew that the plaintiff objected to the use of the mark." *Id.* The court  explained that "[t]his rule can be understood either as an analogue to assumption of risk, or as a factor that prevents the defendant from suffering undue prejudice…

[F]orewarning of a plaintiff's objections generally prevents a defendant from making a laches defense." *Id.* at 859. Further, Prestwick purports that "[t]he Seventh Circuit has recognized the rule that notice of infringement bars a defendant from asserting laches." (Pl's Opp. at 14, Docket #32) (citing *Tisch*, 350 F.2d at 615 (reversing district court's finding of laches in part because defendants received a cease and desist letter, stating "[i]t may be that in this case defendants thought they had the legal right to adopt and use plaintiff's name. Even so, they acted at their own peril in doing so, and further acted at their peril in continuing to use the name in the face of a demand…."); *Stronghold*, 205 F.2d at 925 ("Defendant adopted its logotype emphasizing the word 'Stronghold' with full knowledge of plaintiff's registered trade-mark which featured the same world. It did so at its peril.")).

Under this logic, Prestwick argues Landmark suffered no prejudice because it had notice of the trade dress infringement claim as early as July 23, 2002 (the date of the cease and desist letter). (*See* Pl's Opp. at 14, Docket #32). Plaintiff further argues that "between at least 2002 and 2011, Landmark was continually aware that Prestwick believed that Landmark was copying Prestwick." (Pl's Opp. at 14, Docket #32).[10]

To begin, the Court disagrees with Prestwick's assertion that Seventh Circuit precedent requires the Court to find no prejudice here, simply because Landmark was on notice of the alleged infringement as a result of the cease and desist letter. Indeed, Prestwick fails to acknowledge other Seventh Circuit language found in *A.C. Aukerman,* which in fact suggests the

---

[10]The Court notes that Landmark failed to even acknowledge this entire argument in its Reply, much less distinguish it. (*See* Def's Reply at 6-7, Docket #43). However, an unpersuasive brief does not dictate the Court's analysis; the Court must independently determine whether the prejudice prong of laches is satisfied.

exact opposite. *Id.* at 699 ("[N]otice from a [plaintiff] to the defendant that infringement has occurred, accompanied by a threat of enforcement, and followed by an extended period of nonenforcement, is affirmative conduct from which an alleged infringer could reasonably infer that the claim against it had been abandoned."); *see also Wis. Cheese Grp., Inc. v. V&V Supremo Foods, Inc.*, 537 F. Supp. 2d 994, 1004 (W.D. Wis. 2008) (applying *A.C. Aukerman* language to laches analysis and finding prejudice regardless of cease and desist letters ). Although the language in *Tisch* and *Stronghold (*cases cited by Prestwick which pre-date *A.C. Aukerman*) lends support to the argument, it is far from clear that this language developed a rule that the Court must apply in its prejudice analysis.

Further, the Court declines to find the Eighth Circuit "assumption of the risk" theory as outlined in *Roederer* as outcome determinative in this case. True, Landmark was aware of the alleged infringement in 2002 when it received the cease and desist letter. And, to be sure, Landmark risked the possibility of legal action by continuing the alleged infringement activities following its receipt of the letters. However, in equity, the Court finds that, at some point in time, a party's claim to legal protection must end—regardless of a cease and desist letter. As previously mentioned, laches is derived from the maxim that those that sleep on their rights, lose them. The Court finds that it is simply unreasonable to hold that a party may sleep on their rights, in theory, for *any* period of time, and maintain an infringement claim simply because it gave the other party notice of its alleged infringement. Following the two cease and desist letters sent in this case—both in 2002—there is no evidence that Prestwick took any action until 2014 when it filed suit. The Court finds that Landmark reasonably relied on Prestwick's inaction following the cease and desist letters when Landmark

decided to grow its business. Had Prestwick taken legal action against defendant within a reasonable time after learning of the alleged infringement, defendant "certainly could have invested its time and money in other areas or simply [changed] its products." *Hot Wax*, 191 F.3d at 824.

Prejudice is presumed when the delay is unreasonable and inexcusable, *see Baker Mfg.*, 430 F.2d at 1009, and Prestwick has failed to rebut this presumption. Although there are few specific facts the Court can point to in finding prejudice,[11] the delay here was lengthy, and thus less proof of prejudice is required. *See Hot Wax*, 191 F.3d at 824 (upholding finding of prejudice as matter of law when defendant invested significant time and money in advertising and product development during a 10 to 20-year delay); *Chattanoga*, 301 F.3d at 795 (finding "more severe" prejudice when alleged infringer spent millions of dollars promoting products and acquiring position as market leader during 15-year delay); *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1065 (Fed. Cir.1995) (finding that "increasing sales" may alone constitute economic prejudice). As discussed above, Landmark has gradually grown up its business since 2002 with expanding product lines that allegedly infringe Prestwick's trade dress. (*See* Prestwick PFF ¶¶ 54, 67, 69, 70). Prestwick has failed to rebut the presumption of prejudice; thus, the Court finds that Landmark was

---

[11]The Court notes that Landmark's factual assertions related to a showing of economic prejudice are wholly inadequate, and, in many cases, would be insufficient. For example, defendant claims it "has expanded its product lines, spent significant amounts of money on product advertising and company growth, and dedicated itself to becoming a forerunner in the recycled plastic furnishings market. (Opening Brief at 18, Docket #27). While this may be true, it is not supported by any citation to the record and the following citation "*See generally*, DPFF 22-40 and 60-65," also fails to support this argument. (Opening Brief at 18, Docket #27*)*.

prejudiced by Prestwick's unreasonable delay in pursuing its cause of action and that laches applies.[12]

### 3.1.3 Injunctive Relief

The only issue related to trade dress infringement that remains, then, is the proper scope of the laches defense. Prestwick argues that even if laches applies, the Court should not dismiss the claim entirely, and, instead, allow the claim to proceed on damages suffered from the date the lawsuit was filed forward and for injunctive relief. (Pl's Opp. at 18; Docket #32).

The doctrine of laches bars a plaintiff from recovering damages or wrongfully derived profits during the time prior to filing a suit, *Hot Wax*, 191 F.3d at 824 n.3, but it is not an automatic bar to injunctive relief in trademark actions. *Seven-Up Co. v. O-So-Grape, Co.*, 283 F.2d 103, 106 (7th Cir. 1960). The Seventh Circuit has held that even if laches is found, a party "may still be entitled to injunctive relief, and to damages and profits for the period subsequent to the filing of suit." *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 572 F.2d 574, 578 (7th Cir. 1978). However, courts have also held that "[i]n some cases…'the delay may be so prolonged and inexcusable that it would be inequitable to permit the plaintiff to seek injunctive relief as to future activities.'" *Wis. Cheese*, 537 F. Supp. 2d at 1005 (quoting *Seven-Up*, 283 F.2d at 106).

---

[12] The Court notes, for clarity, that it does not find Landmark's arguments related to loss of important testimony, or litigation costs, to be persuasive. (Def's Opening Brief at 19, Docket #27). The Court agrees with Prestwick that the lost testimony that defendant refers to does not appear to be material. Additionally, Landmark fails to support the argument that litigation costs should be considered as part of the prejudice analysis.

In this case, the Court finds that it would be inequitable to permit Prestwick to seek injunctive relief on its trade dress claims. The delay of 12 years here is significant, and, as discussed above, Landmark has grown its business in a time period spanning over a decade. Since 1996, Landmark has grown its business from 3 employees to 22 and purchased new equipment for its products. (Marsch Decl. Ex. 2 at 8-9, Docket #38-2). Prestwick fails to offer an excuse for this delay other than its progressive encroachment argument, which, as discussed above, fails. As the maxim goes, the plaintiff slept on its rights and lost them. As such, the Court finds that Prestwick is not entitled to injunctive relief in this case.

Finally, because the Court finds that the doctrine of laches bars both monetary and injunctive relief, it need not address Landmark's alternative argument that Prestwick's products do not possess protectable trade dress. Thus, the Court will grant summary judgement on the trade dress infringement claim and it will be dismissed in its entirety.

3.2     Copyright Infringement

Landmark initially argues that it was entitled to summary judgment on the copyright infringement claim because the LMU product is not entitled to protection because "there is little design beyond the function of a cabinet to enclose a particular type of waste receptacle." (Opening brief at 28, Docket #27). However, Prestwick points out that this argument is misplaced since "Prestwick's copyright is not over its products but over the rendering, which is not a useful article, but a copyrightable graphic work." (Pl's Opp. at 38, Docket #32). In its Reply, Landmark clarifies its argument and instead contends summary judgment is appropriate because it did not copy the Prestwick rendering of the LMU-badged Verde series enclosure. (Def's Reply at 14, Docket #43).

"To establish copyright infringement, [a party] must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (quoting *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361 (1991)). The owner of a copyright may obtain a certificate of copyright, which is "prima facie evidence" of its validity. 17 U.S.C. § 410(c). Copying may be "inferred 'where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work.'" JCW Invs. 482 F.3d at 915. (citations omitted). Access is shown where the defendant had an opportunity to view the copyrighted item. *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 508 n. 5 (7th Cir. 1994). "It is not essential to prove access, however." *Id.* If "'two works are so similar as to make it highly probable that the later one is a copy of the earlier one, the issue of access need not be addressed separately…'" *Id.* (quoting *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1170 (7th Cir. 1997)). To determine "substantial similarity" "the test is whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Atari Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982) (*superseded by statute on other grounds as recognized in Scandia Down Corp. v. Euroquilt Inc.,* 772 F.2d 1423, 1429 (7th Cir. 1985).

The Court finds that material disputed facts preclude summary judgment on this claim.[13] It is undisputed that Landmark had access to the copyrighted rendering. (Prestwick PFF ¶ 134) (On October 18, 2011, LMU employee sent Landmark the copyrighted rendering of Prestwick's LMU-badged Verde series). As such, Landmark's reliance on *Building Graphics, Inc., v. Lennar Corp.,* 708 F.3d 573 (4th Cir. 2013) carries little weight since the analysis there focused on whether the defendant had access to the copyrighted home designs. What remains, then, is whether the accused work is substantially similar to the copyrighted work—an issue on which Landmark makes no argument.[14] Courts have found that "[w]here reasonable minds could differ on the issue of substantial similarity…summary judgment is improper." *Cavalier v. Random House, Inc.,* 259 F.3d 97, 112 (1st Cir. 2006). The Court finds that reasonable minds could differ here on the issue of substantial similarity, especially considering this argument was not developed in the briefing. Thus, summary judgment is improper on the copyright infringement claim.

Because this claim survives summary judgement, the Court urges the parties to focus on exactly what this copyright infringement claim actually entails; it is clear from the briefing on this issue that neither party has done

[13]The Court also notes that summary judgment should also be denied simply because Landmark's initial argument failed to even address that the copyright claim is related to the copying of the rendering of the LMU-badged Verde series and *not* the manufactured product itself. Landmark's argument is undeveloped and unclear.

[14] Landmark argues, in two sentences and without any detail, that "[a]t best, Prestwick has established elements of 'innocent infringement'" which is not actionable. (Def's Reply at 14-15, Docket #43). Landmark fails to articulate any argument, much less with any specificity, as to how the undisputed facts prove this point.

so at this stage. One might reasonably conclude that Landmark intended to argue—but unsurprisingly failed to clearly articulate it in the only two sentences addressing the matter—that the rendering of the LMU-badged Verde series should not be considered a graphic work, and, therefore, receive no protection because it is incapable of existing independently from the utilitarian aspects of the article. *See* 17 U.S.C. § 101 (noting that a useful article is considered a "pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."); *Incredible Techs., Inc. v. Virtual Techs., Inc.* 400 F.3d 1007, 1012 (7th Cir. 2005) (noting the tension between copyright and patent laws). In preparing for trial, especially in considering potential jury instructions, the parties should strive to determine what portion of the rendering, if any, deserves copyright protection and, if so, what damages occurred as a result of that copying.

4.      CONCLUSION

In sum, the Court finds that: (1) summary judgment will be granted on the trade dress infringement claim because the doctrine of laches applies; and (2) summary judgment will be denied as to the copyright infringement claim because material disputed facts exist.

Accordingly,

IT IS ORDERED that the defendants' Motion for Summary Judgment (Docket #26) be and the same is hereby GRANTED in part and DENIED in part, as more fully described in detail above;

IT IS FURTHER ORDERED that the plaintiff's Motion to Restrict (Docket #31) and the defendant's Motion to Restrict (Docket #46) be and the same are hereby GRANTED; and

IT IS FURTHER ORDERED that the plaintiff's Motion for Leave to File Amended Complaint (Docket #39) be and the same is hereby GRANTED.

Dated at Milwaukee, Wisconsin, this 19th day of May, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge